■ In the Matter of ERIE BOULEVARD HYDROPOWER, L.P., Petitioner, v STUYVESANT FALLS HYDRO CORPORATION, Respondent. [816 NYS2d 224]—

---

642

Carpinello, J. Proceeding initiated in this Court pursuant to EDPL 207 to review a determination of respondent which found a public benefit to be served by the proposed acquisition of certain property known as the Stuyvesant Falls Hydroelectric Project.

Petitioner is the current owner of the Stuyvesant Falls Hydroelectric Project located in the Town of Stuyvesant, Columbia County. The project consists generally of a dam and an adjacent hydroelectric generating facility which spans the Kinderhook Creek and was originally constructed around 1900. In the early 1980s, the immediate prior owner had acquired a license to operate the project from the Federal Energy Regulatory Commission (hereinafter FERC), but surrendered that license in the 1990s and mothballed the project. Pursuant to special legislation, FERC reinstated the license in favor of the Town in 2003 (see Pub L 108-137, 117 US Stat 1827).* This legislation also authorized the Town to add a colicensee "at any time" (117 US Stat 1865), and the Town successfully added respondent as a colicensee. Thereafter, respondent made several offers to buy the project from petitioner, with each being rejected, and further sought to acquire title by eminent domain.

---

* We disagree with the blanket assertion in the concurrence/dissent that the instant proceeding does not relate to the issuance of a license. The FERC order reinstating the license specifically required respondent to obtain title to the subject premises.

In March 2005, in conjunction with respondent's third such attempt to acquire title to the project by eminent domain, respondent held a public hearing (*see* EDPL 201). Following receipt of written comments, respondent adopted a determination and findings in accordance with the requirements of EDPL 204. Notice of that determination was properly published, and petitioner thereafter commenced this proceeding pursuant to EDPL 207 seeking an annulment of the determination. We now dismiss the petition, rejecting each of petitioner's challenges to the determination.

First, respondent suggests that this Court lacks jurisdiction to entertain this proceeding. We disagree. It is clear that under the Federal Power Act, licensees may exercise the power of eminent domain in either federal district court or in state court (*see* 16 USC § 814). Respondent's decision to proceed in accordance with the Eminent Domain Procedure Law clearly made it subject to the laws of this state, which regulates the manner in which real property can be acquired by eminent domain (*see* EDPL 104).

Petitioner claims that respondent, as a nongovernmental entity, lacks the power to condemn the project by eminent domain. As a colicensee under the Federal Power Act (*see* 16 USC § 814), respondent has the authority to act as a condemnor. Notably, the license requires the licensees to obtain title to the property and specifically grants the Town authority to pursue those rights under the Federal Power Act. FERC has articulated that colicensees may agree among themselves to divide their responsibilities (*see Fourth Branch Assoc. v Niagara Mohawk Power Corp.,* 89 FERC ¶ 61,194, 61,595 [1999]), and the Town is permitted to delegate its power of eminent domain for a public purpose to a private corporation (*see Rensselaer & Saratoga R.R. Co. v Davis,* 43 NY 137, 142 [1870]; *Keystone Assoc. v State of New York,* 39 AD2d 176, 179 [1972], *affd* 33 NY2d 848 [1973]). As the delegation occurred prior to FERC's approval of respondent as a colicensee, respondent has the requisite authority to condemn the property.

Petitioner also contends that respondent failed to give it the notice required by EDPL 202, failed to conduct an environmental review of the project in violation of the State Environmental Quality Review Act (*see* ECL art 8 [hereinafter SEQRA]) and violated petitioner's federal and state constitutional rights by failing to insure that just compensation be given for the project. Addressing the issue of notice, aside from a publication (*see* EDPL 202 [A]), "[t]he condemnor shall serve, either by personal service or certified mail, return receipt requested, a notice of

the purpose, time, date, and location of a public hearing . . . to [the] owner or his or her attorney of record" (EDPL 202 [C] [1]). The record demonstrates that petitioner did in fact receive timely notice of the hearing, albeit by ordinary mail, and that this notice was properly published. As EDPL 202 provides that an "[i]nadvertent failure to notify a person or persons entitled to notice under this section shall not be jurisdictional nor construed to affect the validity of any title acquired by a condemnor under this law" (EDPL 202 [D]; *see Matter of New Life Fellowship v City of Cortland,* 175 AD2d 343, 344 [1991]), we find that the irregularity in service is not fatal. The matter of compensation is not ripe for review since respondent has not yet filed a condemnation petition with the court (*see* EDPL 402).

Lastly, we address whether respondent's failure to conduct an environmental review of its proposed taking was in violation of SEQRA. In this regard, our analysis must begin with *Matter of Niagara Mohawk Power Corp. v New York State Dept. of Envtl. Conservation* (82 NY2d 191 [1993], *cert denied* 511 US 1141 [1994]) and its precedential underpinnings (*see Matter of Power Auth. of State of N.Y. v Williams,* 60 NY2d 315 [1983]; *Matter of de Rham v Diamond,* 32 NY2d 34 [1973]). In *Matter of de Rham v Diamond (supra),* the Court of Appeals noted that: "Congress, by the Federal Power Act, has vested the Federal Power Commission [now FERC] with broad responsibility for the development of national policies in the area of electric power, granting it sweeping powers and a specific planning responsibility with respect to the regulation and licensing of hydroelectric facilities affecting the navigable waters of the United States. [FERC's] jurisdiction with respect to such projects pre-empts all [s]tate licensing and permit functions" (*id.* at 44 [citations omitted]).

In particular, the Court of Appeals observed that there was only one exception to "the otherwise exclusive jurisdiction" (*id.*) granted to FERC's predecessor by the Federal Power Act, namely, the authority of a state to determine whether a particular project violates its own applicable water quality standards (*see* 33 USC § 1341). So that there could be no confusion about the matter, the Court of Appeals further stated that "Congress did not empower the [s]tates to reconsider matters, unrelated to their water quality standards, which [FERC] has within its exclusive jurisdiction under the Federal Power Act" (*id.* at 44). Subsequently, in reversing a determination by this Court, the Court of Appeals in *Matter of Power Auth. of State of N.Y. v Williams (supra* at 327) again repeated its view that consideration of environmental interests beyond the limited bounds of water

quality standards in the context of FERC licensing proceedings would constitute an intrusion into an area preempted by the federal statute.

Thus, *Matter of de Rham v Diamond (supra)*, *Matter of Power Auth. of State of N.Y. v Williams (supra)* and *Matter of Niagara Mohawk Power Corp. v New York State Dept. of Envtl. Conservation (supra)* all confirm that the provisions of the Federal Water Pollution Control Act provide the *only exclusion* from the otherwise comprehensive scheme of preemption authorized by the Federal Power Act. Indeed, in *Matter of Niagara Mohawk Power Corp. v New York State Dept. of Envtl. Conservation (supra* at 196), the Court of Appeals specifically rejected a claim that SEQRA review of a FERC-governed license application was warranted. Since no SEQRA review was required as a part of this acquisition, the petition should be dismissed.

To the extent not discussed, petitioner's remaining contentions have been reviewed and are rejected as being without merit.

Crew III, J.P., Spain and Kane, JJ., concur.

Peters, J. (concurring in part and dissenting in part). I cannot agree with the majority's conclusion that respondent was not required to comply with the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]). Although I recognize that the Federal Energy Regulatory Commission (hereinafter FERC) has been given exclusive comprehensive jurisdiction by the Federal Power Act over issues relating to licensing and permits, this proceeding does not relate to the issuance of either.

In reviewing the doctrine of preemption, it is axiomatic that state law will be regarded as preempted by federal law where Congress explicitly states that state law is preempted, where the federal legislation is so comprehensive in its scope that it is inferable that Congress intended to fully occupy the field and where state law directly conflicts with federal law (*see Pacific Gas & Elec. Co. v State Energy Resources Conservation & Development Comm'n*, 461 US 190, 203-204 [1983]). However, preemption is not favored (*see Nealy v US Healthcare HMO*, 93 NY2d 209, 218 [1999]; *Rollin v Frankel & Co.*, 290 AD2d 368, 369 [2002]), and when a claim falls traditionally within the domain of state law, preemption will not be found " 'unless that was the clear and manifest purpose of Congress' " (*New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US 645, 655 [1995], quoting *Rice v Santa Fe Elevator Corp.*, 331 US 218, 230 [1947]; *see Nealy v US Healthcare HMO, supra* at 217). With no express or direct conflict preemp-

tion here, we must look to field preemption and determine its relation to an eminent domain proceeding.

Field preemption occurs when the regulation of the field is " 'so pervasive as to make reasonable the inference that Congress left no room for the [s]tates to supplement it' " (*Fidelity Fed. Sav. & Loan Assn. v De la Cuesta*, 458 US 141, 153 [1982], quoting *Rice v Santa Fe Elevator Corp., supra* at 230; *see Pacific Gas & Elec. Co. v State Energy Resources Conservation & Development Comm'n, supra* at 204). However, preemption will not occur where the arena in which the federal government has legislated involves concurrent state-federal power (*see Matter of Presnell v Leslie*, 3 NY2d 384, 390 [1957]). Here, the Federal Power Act specifically recognizes the right of any licensee to pursue an eminent domain proceeding either in federal or state court (*see* 16 USC § 814). If pursued in federal court, the practice and procedure "shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the [s]tate where the property is situated" (16 USC § 814). By these terms, the act illustrates the intention of Congress to reserve to the state areas traditionally within its province. The United States Supreme Court has recognized that in the Federal Power Act, certain subjects will remain under the state's jurisdiction (*see First Iowa Hydro-Electric Cooperative v FPC*, 328 US 152, 167 [1946]; *see also Oakland Club v South Carolina Pub. Serv. Auth.*, 110 F2d 84, 86 [1940]). In condemnation proceedings, the applied substantive law is federal, but the source of the federal law is the law of the state in which the property is located (*see Winooski Hydroelectric Co. v Five Acres of Land in E. Montpelier & Berlin, Vt.*, 769 F2d 79, 81-82 [1985]). State law has been found to be controlling in eminent domain proceedings regarding issues of compensation for improvements (*see McGinley v Central Nebraska Pub. Power & Irrigation Dist.*, 124 F2d 692, 693 [1942]) and recovery pursuant to such proceedings (*see Central Nebraska Pub. Power & Irrigation Dist. v Fairchild*, 126 F2d 302, 305 [1942]). Most revealing is *Wisconsin Pub. Serv. Corp. v Shannon* (2005 WL 889721, *1, 2005 US Dist LEXIS 6711, *1 [WD Wis, Apr. 15, 2005, Shabaz, J.]), which dealt with the authority to institute condemnation proceedings over easements. With no federal preemption of condemnation actions or even a federal forum, the authority for easements was found to remain with the state notwithstanding the Federal Power Act (*see* 2005 WL at *1-2, 2005 US Dist LEXIS at *3-5; *see also Robinson v Transcontinental Gas Pipe Line Corp.*, 306 F Supp 201 [1969], *affd* 421 F2d 1397 [1970], *cert denied* 398 US 905 [1970]).

Since this eminent domain proceeding does not relate to the

issuance of a permit or a license and the requirements for SEQRA review in connection with the acquisition of property do not usurp any power granted to FERC or directly conflict with its authority, I would require SEQRA review. Adjudged that the determination is confirmed, without costs, and petition dismissed.